DECISION
Plaintiffs-appellants, Jennifer Snyder and her parents, Nancy and Douglas Snyder, appeal the judgment of the Ohio Court of Claims in favor of defendant-appellee, the Ohio Department of Transportation ("ODOT"). By its judgment, the trial court concluded that appellee was not liable for injuries resulting from a traffic accident.
On January 26, 1995, Jennifer Snyder, then seventeen years old, drove her 1989 Ford Tempo to the Berlin Village Mall to attend a job interview. The mall parking lot is adjacent to the south side of U.S. Route 62, a two-lane road that runs east and west. As Snyder was exiting the parking lot, in an apparent effort to turn left into the westbound lane of U.S. Route 62, Atlee Troyer, a professional truck driver, was driving his tractor trailer eastbound on U.S. Route 62. Troyer swerved but was unable to avoid Snyder's vehicle, which was destroyed upon impact. Snyder suffered severe and permanent physical injuries, including traumatic brain injury. She will require on-going medical care.
Construction of the Berlin Village Mall and its parking lot was completed and the mall was opened in September 1994. Leslie Roach, an ODOT assistant superintendent, testified that, in October or November of 1994, he noticed that the mall parking lot contained parking stalls, identified by painted lines, within ODOT's right-of-way. Roach contacted one of the mall owners and advised him that the parking stalls had to be removed from the right-of-way; the owners complied.
Roach had also observed that the mall owners had extended the pavement for their parking lot into the right-of-way without first obtaining a permit from ODOT. At the time, however, Roach did not perceive this as a problem and he did not ask the owners to do anything about the encroaching pavement.
Shortly thereafter, the mall owners contemplated installing curbs along U.S. Route 62 and, on December 23, 1994, the owners applied for an ODOT permit to construct part of its parking lot within the right-of-way according to the designs set forth in the permit application. The owners listed April 30, 1995, as the start date for the construction, reasoning that spring weather would be more favorable for the work that needed to be done. On February 22, 1995, ODOT issued the permit, which required that the curbs be installed by September 15, 1995.
Leslie Roach testified that the Berlin Village Mall parking lot violated ODOT rules and regulations because it did not have a defined ingress and egress to U.S. Route 62. Several former ODOT employees likewise testified that the unrestricted traffic access violated ODOT regulations and created a traffic hazard.
On the date of the accident, January 26, 1995, the curbs had yet to be constructed. Without curbs, the parking area had no defined ingress and egress from U.S. Route 62. Rather, cars could enter or exit the parking area at any point along the expanse where the parking lot abutted the road.
Although there was no precipitation on the day of the accident, it had snowed during the previous days. The mall owners had hired a private contractor to perform snow removal services. The contractor had plowed the parking lot on several occasions in the days prior to the accident. Kim Kellogg, owner of the snow removal service, testified that most of the plowed snow was placed behind the mall, but that smaller piles were plowed into a utility island located in ODOT's right-of-way in front of the mall. According to Dana Jackson, the State Highway Patrol Officer who investigated the accident, the snow piled in the right-of-way was approximately four feet high at its highest point.
When Snyder attempted to exit the parking lot, she positioned her car to the east of the snow pile. Her view of the traffic approaching from the west was apparently obstructed by the snow pile and utility pole located in the island in ODOT's right-of-way.
Archie Burnham, a traffic safety expert called by appellants, testified that the unrestricted access from the mall parking lot to U.S. Route 62 presented an unacceptable traffic hazard, and he opined that, in permitting the mall owners until September 15, 1995, to construct curbs between the parking lot and U.S. Route 62, ODOT waited too long to act once it detected the violation. Andrew Ramisch and Bruce Enz, also called as experts for appellants, opined that the unrestricted access from the parking lot onto U.S. Route 62 created a hazard for motorists and caused the accident at issue.
By their complaint, appellants allege that ODOT's negligence was a proximate cause of Snyder's injuries. Appellants contend that ODOT permitted construction of the Berlin Village Mall parking lot within ODOT's right-of-way without ensuring that the parking lot would be safe for motorists exiting onto U.S. Route 62. Specifically, appellants allege that ODOT was negligent because: (1) it did not require installation of curbs and/or other barriers to prevent motorists from using the northernmost portion of the parking lot to access U.S. Route 62; (2) it did not mandate appropriate signage within its right-of-way to prevent the public from using this area to access U.S. Route 62; and (3) it did not lower the speed limit on U.S. Route 62 from fifty-five miles per hour.
The trial court concluded that appellants failed to prove its case-in-chief against ODOT. The court further concluded that, even if appellants had proven that ODOT's negligence was a proximate cause of the accident, appellants would still not prevail. The court ruled that Snyder's own negligence was a proximate cause of the accident. The court concluded that Snyder's contributory negligence was greater than the alleged negligence by ODOT, barring recovery by appellants under the comparative negligence provisions of R.C. 2315.19(A)(1).
Appellants now assign the following errors:
 The Ohio Court of Claims erred to the prejudice of plaintiffs-appellants by holding that the Ohio Department of Transportation (hereinafter "ODOT") was not negligent per se under R.C. 5501.11 and/or 5515.02.
 The Ohio Court of Claims erred to the prejudice of plaintiffs-appellants by holding that the ODOT was not negligent in failing to follow and enforce standards of care set forth by ODOT's Location and Design Manual and by the American Association of State Highway and Transportation Officials.
 The Ohio Court of Claims erred to the prejudice of plaintiffs-appellants by holding that ODOT was not negligent under its duty to maintain highways in a reasonably safe condition and free from nuisance.
 The Ohio Court of Claims erred to the prejudice of plaintiffs-appellants by holding that Jennifer Snyder's alleged negligence was greater than that of ODOT.
We address appellants' fourth assignment of error, as we conclude that our resolution of the fourth assignment of error is dispositive of this appeal. By their assignment of error, appellants contend that the trial court erroneously concluded that Jennifer Snyder's negligence exceeded ODOT's alleged negligence, barring appellants' recovery.
The appropriate standard of review is whether the decision of the trial court is contrary to law. We will not disturb the trial court's judgment if it is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. "`If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.'" Estate of Barbieri v. Evans (1998), 127 Ohio App.3d 207,211.
Ohio's comparative negligence statute, R.C. 2315.19(A), bars recovery by a plaintiff if her own contributory negligence is greater than the defendant's negligence. We conclude that there is ample evidence in the record to support the trial court's conclusion that, even assuming ODOT was negligent as alleged by appellants, Snyder's contributory negligence exceeded ODOT's negligence.
ODOT's three accident reconstruction experts opined that Snyder should have been able to safely see the on-coming truck had she pulled forward of the snow pile and stopped. The highway patrol officer who investigated the accident scene testified that, although the snow pile presented a bad obstruction, he was able to see on-coming traffic on U.S. Route 62 from his own vehicle when he moved it close to the white edge line. He also testified that, when it was time for him to leave the scene, he backed up and exited the parking area from a different spot where he could see traffic more clearly. Atlee Troyer, the driver of the tractor trailer truck, testified that Snyder's vehicle was already moving from behind the snow pile as it came across the white edge line.
Appellants never denied that Jennifer Snyder was, herself, negligent, as her attorney acknowledged in the following statement to the trial court:
 * * * Judge, just so you understand, we're not saying that Jennifer was error free and did not have any comparative negligence. She pealed out and did not yield the right-of-way. * * *
Furthermore, appellants' own witnesses provided the court with evidence of Snyder's negligence. Archie Burnham, a traffic safety expert for appellants, conceded that Snyder failed to yield the right-of-way. He further admitted that, had she positioned herself at a different spot in the parking lot, Snyder would have had "different sight conditions" and it would have been "a lot less likely that [the accident] would have occurred." He admitted that Snyder had the option of backing up and moving farther away from the snow pile to improve her ability to see on-coming traffic.
Similarly, Andrew Ramisch, a civil engineer called by appellants, admitted on cross-examination that Snyder could have seen down the roadway if she had repositioned her car:
 Q: Based upon your knowledge of this accident, was there anything that prevented Ms. Snyder from inching her car forward — forward ahead of the snow pile to get a better view?
 A: No; I'm not aware of anything that prevented her from so doing.
 Q: Would it be true, sir, that Ms. Snyder should have been able to situate herself in the gap between the edge and the snow pile?
 A: I think, physically, there was probably room for that.
Q: In order to see down the roadway?
A: Yes.
 Q: Would you agree with me the snow pile was not an obstruction in an area located 10 to 12 feet back from the edge line?
 A: In the area 10 to 12 feet from the edge line, I would agree. [Tr. at 381.]
Bruce Enz, an accident reconstruction analyst called by appellants, also testified that Snyder had options to exit the parking lot from a safer vantage point, stating, in relevant part, as follows:
 Q: You would agree that [if] Ms. Snyder didn't believe that she had the ability to be able to look west down 62, that she had options to back out of this area here and come up perhaps here, furthest in the parking lot, and improve her sight distance?
 A: It's an open conflict area, so she could have gone on anywhere there wasn't a pile of snow or a barrier.
Q: So she had options, right?
A: Yes, sir.
 Q: She could have gone out at another location along here, right?
A: She could have.
 Q: She could have exited and gone along the township road to the east, right?
A: Yes. Tom Lion. [Tr. at 471.]
In light of this record, we believe that the trial court's judgment that Snyder's negligence exceeded ODOT's alleged negligence is supported by competent, credible evidence. Accordingly, we overrule appellants' fourth assignment of error.
Having concluded that the trial court's finding of contributory negligence bars recovery, pursuant to R.C. 2315.19(A), even if ODOT were negligent as alleged by appellants, we overrule as moot appellants' first, second and third assignments of error and affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
DESHLER and BROWN, JJ., concur.